This is a suit for assault and battery wherein Major Spears alleges that he sustained a compound fracture of the left arm, below the elbow, as a result of being struck, without any provocation whatsoever, by Booker T. Sensley, with a piece of timber. He claims damages in the amount of $1,208, comprising $1,000 for physical pain and suffering, $200 for loss of use of the left arm, and $8 for the doctor's bill.
The defense is to the effect that the blow was struck only after provocation and in self-defense.
After hearing the case the district court rendered judgment in favor of the defendant, dismissing plaintiff's suit at his cost, and plaintiff has appealed.
Plaintiff's case is built on the testimony of plaintiff himself, of Luther Gair, his nephew, and of Dr. C.S. Toler.
The plaintiff testifies that on December 30, 1941, he went over to the place of Ben Sensley and Booker T. Sensley, brothers and co-owners, to see them with reference to the cutting of five trees from a lane between his property and the property of the Sensleys; plaintiff being of the opinion that the lane or part of the lane wherein the trees were cut was his property. He states that he saw Ben Sensley first and talked to him about the trees and that a while later, while he was sitting near a lumber pile, Booker T. Sensley came over there and that he thereupon told Booker T. that he had come over to see about the trees which had been cut in the lane, and that Booker T. thereupon began cursing him and told him that if he was going to worry about two or three trees being cut in the lane, he could take his "damned ax" and cut four or five trees in the Sensley pasture. Plaintiff states in effect that he remonstrated with Booker T. for cursing and asked him to talk as he was talked to; that he told Booker T. that he did not want to cut trees in his pasture, and that the only question was whether or not his trees had been cut; that Booker T. had answered that he was not going to have the land surveyed, and that was the only way he could get him to pay for the trees; that he insisted again that Booker T. desist from cursing, whereupon Booker T. started laughing and told him that he was only joking and playing with him, and at the same time picked up a piece of scantling and struck at his head, and plaintiff threw up his arm to ward off the blow and received it on his left arm, sustaining the injury complained of herein, and Booker T. then grabbed him and threw him on a lumber pile and held him until being pulled off by Luther Gair and Ben Sensley. He states that when they pulled off Booker T., his brother Ben said: "You ought to stayed at home, I knowed you was coming here to start some humbug". He states further that after the scuffle Booker T. stood around and afterwards offered to fight him fair, at which time he told Booker T. that there was no chance of fighting fair, since his arm was broken.
Luther Gair testified that upon noticing that five trees had been cut in the lane at the back of the Spears place, he went to the home of his uncle, Major Spears, and told him about the trees being cut; that his mother, Annie Gair, was present at the time and that he, his mother and Major Spears went over to the Sensley place and upon arriving at the sawmill on the Sensley place saw Ben Sensley and talked with him with reference to the cutting of the trees; that shortly thereafter his mother left and that Ben Sensley evidently must have satisfied them to a certain extent. He states that a little later on Booker T. Sensley came over to the mill and that Major Spears told him that he had come over to see him and Ben Sensley concerning trees which they had cut in the lane. He told Booker T. that it was his understanding that the property on which the trees were cut belonged to the Spears place; that he had already seen Ben about it, and that he wanted to see him also since they were partners or joint owners; that Booker T. then told him if he wanted any trees, he could take his "damn ax" and go in his pasture and cut some trees. Major Spears then told him that those trees that were cut in the lane were not for sale and that he, plaintiff, had no right to cut trees on the Sensley place. Booker T. then began cursing him and Major Spears asked Booker T. "Why don't you talk to me like I am talking to you?"; that Booker T. then told him that he was only playing and thereupon stooped over and picked up a piece of green timber which he swung in the direction of Major Spears' head; that Major Spears raised his left arm and stopped the blow on his arm. On cross-examination this witness testified that both Booker T. and *Page 399 
Major Spears cursed one another before the blow was struck; that Booker T. first started the "cussing".
Dr. Toler testified that he treated plaintiff for a broken arm; that the injury was a simple fracture of the radius. On questioning by the court as to his opinion with reference to the position of the arm at the time it was struck, he refused to commit himself definitely, but from that testimony it appears that if the blow was struck from the front (which seems to be the testimony of all witnesses), the arm must have been down when the blow was struck.
The defense consists of the testimony of defendant himself, his brother Ben and an attempt to show his good character by testimony of Mr. R.D. Kent and discredit Major Spears by the testimony of Silas Gibbs.
Booker T. admits that he struck the plaintiff with a piece of timber, but he testifies that he did so only after being provoked by being called a "son of a bitch" by plaintiff and because he saw plaintiff with his left hand in his pocket holding the handle of a razor and he feared for his own safety. He states that he hit plaintiff on the left arm while he had his hand in the position aforesaid and immediately dropped the timber and that plaintiff thereupon advanced towards him and grabbed him, and he, in turn, grabbed plaintiff and threw him on the lumber pile. He states that he does not know whether plaintiff's arm was broken by the blow or when he fell.
The defendant's brother, Ben, corroborates the testimony of his brother with reference to the actual scuffle. Both the defendant and Ben testified that trees had been cut from their side of a 12-foot lane; that when they bought their place it adjoined a 6-foot lane between their place and plaintiff's land, which 6-foot lane was designated by an iron stob, and that when they built their fence, they left another 6 feet so as to create the 12-foot lane.
R.D. Kent was called apparently to testify with reference to the good character of the defendant and with reference to the property which they were supposed to have purchased from him, but his only testimony is that the Sensleys bought their property from his father-in-law, and that he bought the notes from his father-in-law, and they have paid him.
Silas Gibbs testified that he met Major Spears a few days before the incident which gives rise to this suit and that at that time he and Spears discussed the question of the trees which were cut in the lane; that Spears asked him if he was working at the sawmill and that he told him "yes", and that he then asked him if he was working in the woods, and that he answered that he was not; that Spears told him then that some of his timber had been cut and that he was going to see the Sensleys about it and that if they cut it, they would have to pay him for it or else "We're going to have it". This testimony of Gibbs was vigorously denied by Major Spears upon being recalled, and Luther Gair, on recall, testified that plaintiff had no knowledge of the cutting of the trees until he informed plaintiff thereof on the day of the altercation.
The trial judge has failed to furnish us with any written reasons for his judgment, but naturally it is based entirely on the question of fact to be determined from the contradictory testimony of Major Spears and his nephew Luther Gair on the one hand, and the Sensley brothers on the other, and, of course, he was in a better position to judge which side was telling the truth than we are. Apparently he reached the conclusion that the injury caused plaintiff by defendant resulted from the blow struck by defendant after being provoked and probably when in fear of his own safety. The plaintiff and his nephew, it will be noted, testified that plaintiff raised his hand to ward off a blow which was struck unexpectedly and suddenly and without provocation. The defendant and his brother, on the other hand, testified that the blow was struck while the plaintiff was reaching in his pocket. And the trial judge apparently felt that the medical testimony supported the latter testimony, for the reason that it was the radius bone which was fractured, whereas if the arm had been uplifted a blow from the front probably would have fractured the ulna. In any event, as stated before, the trial judge must necessarily have found, as a matter of fact, that the defendant was justified in inflicting the blow and we cannot, from the contradictory evidence, see wherein he manifestly erred in his finding.
Judgment affirmed. *Page 400